United States District Court
District of Massachusetts

| | |
|---|---|
| Brian Cavitt, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. |
| Massachusetts Department of ) | 19-12479-NMG |
| Corrections, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Pro se plaintiff Brian Cavitt ("Cavitt" or "plaintiff") is an inmate in the custody of the Massachusetts Department of Corrections ("MDOC") who is currently serving consecutive life sentences in Red Onion State Prison ("ROSP") in Pound, Virginia. He alleges that he was transferred to the Virginia facility in November, 2016, and has since been kept in solitary confinement. Cavitt brings this suit against the MDOC and employees of both the MDOC and the Virginia Department of Corrections ("VDOC") in their individual and official capacities pursuant to 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights under the United States Constitution, among other claims.

Pending before this Court is the motion to dismiss for failure to state a claim filed by the MDOC and MDOC employees

Carol Mici, the Commissioner of MDOC ("Mici"), Abbe Nelligan, the Director of MDOC's Central Classification Division ("Nelligan") and Joy Gallant, the Director of Classification at Old Colony Correctional Center ("Gallant").

## I. Background

Since Mr. Cavitt was first detained by the MDOC in 2006, he has been charged with and found guilty of committing several disciplinary infractions. In November, 2006, while awaiting his criminal trial, Cavitt was charged with assaulting a prison officer in Hampden County Jail in Ludlow, Massachusetts and, consequently, transferred to the Special Management Unit ("the SMU") in the Souza-Baranowski Correctional Center in Shirley, Massachusetts. Between 2007 and 2012, Cavitt was found guilty of planning escapes on four separate occasions and subsequently placed in the Disciplinary Detention Unit ("the DDU") of the prison in which he was then incarcerated. During that period, Cavitt also committed other violent disciplinary infractions while in MDOC custody and was eventually screened for "out-of-state" classification because of "gang issues".

In or about November, 2016, after serving a three-year sentence in the DDU for planning an escape, Mr. Cavitt was allegedly transferred to a maximum security prison in Virginia pursuant to the Interstate Corrections Compact, see M.G.L. c. 125 App. § 2-1, and placed in the SMU. Soon thereafter, a

classification hearing was convened and he was classified to "administrative segregation" pursuant to the VDOC "Step-Down Program" due to his disciplinary "history" in Massachusetts. Although Cavitt had allegedly served the requisite time for the infractions he committed in Massachusetts, he was placed in solitary confinement and told that he would "never see general population in the State of Virginia".

In April, 2017, plaintiff sent a letter to the MDOC to inform them of his prolonged solitary confinement in ROSP. MDOC employee Douglas Cabral (who is not a named defendant), forwarded the letter to the VDOC for investigation, pursuant to which the latter concluded that Cavitt's treatment by the VDOC was no different than procedures used by the MDOC. Cavitt disagrees.

In May, 2019, Cavitt allegedly appeared before an external review board which convenes every six months to contest his continued solitary confinement in ROSP but his status was not changed. Plaintiff contends that, due to his long-term solitary confinement, he has suffered severe physical and mental health damage, including anxiety, depression, hallucinations and suicidal thoughts.

Accordingly, Cavitt has brought claims against the MDOC, three MDOC employees and the Director of the VDOC, Harold Clarke ("Mr. Clarke") for violations of the Eight and Fourteenth

Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 (Counts I-III); for violation of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA") (Count IV) and for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (Count V). Cavitt is also currently a named plaintiff in a class-action lawsuit brought against the VDOC, Director Clarke and others for their long-term solitary confinement practices under the Step-Down Program.[1]

In an Order entered by this Court on March 12, 2020, Cavitt's § 1983 claims (Counts I-III) were dismissed on sovereign immunity grounds against the MDOC in their entirety and against the individuals in their official capacity to the extent the claims sought monetary damages.  The MDOC defendants now move to dismiss the remaining claims, arguing, inter alia, that none of the facts alleged in the complaint pertain to decisions of or actions by MDOC employees and that the MDOC defendants are not responsible for the decisions of VDOC officials.

Cavitt responds that the complaint states that the MDOC employees transferred him to Virginia with knowledge of the VDOC

---

[1] On June 23, 2020, the summons was returned unexecuted as to defendant Clarke and the Court, therefore, directs plaintiff to show cause why the claims against Clarke should not be dismissed.

policies and segregation practices and with the intention of having him placed in segregation in a manner which would violate the MDOC's policies. He adds, without legal or factual support, that

> once the MDOC had an agreement from any state to accept Mr. Cavitt, the MDOC had a duty to ensure Mr. Cavitt's placement in general population before that transfer could be committed to.[2]

By not fulfilling their duty, according to Mr. Cavitt, each of the named individual defendants breached that duty.

## II. Discussion

### A. Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

---

[2] Section 421.08 of the MDOC rules governing Departmental Segregation Units authorizes the placement of an inmate transferred "out-of-state" in restrictive confinement upon transfer, so long as a hearing is convened within 15 days of his placement therein. 103 CMR 421.08

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers and are read liberally on a motion to dismiss. Boivin v. Black, 255 F.3d 36, 43 (1st Cir. 2000). Even pro se pleadings must, however, follow procedural and substantive law and, therefore, present sufficient facts to suggest an actionable claim. See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass 2001) (citing Lefebvre v. Comm'r Internal Rev., 830 F.2d 417, 419 (1st Cir. 1987)).

### B. Application

#### 1. 42 U.S.C. § 1983 – Personal Liability

This Court construes Counts I, II and III with respect to the individual defendants as claims for supervisory liability

under § 1983.  The pro se plaintiff accuses the MDOC defendants of allegedly causing his constitutional rights to be violated in a Virginia prison by

> pursuing specific placement in an 'alternative maximum security placement' out-of-state, for the sole purpose of having Mr. Cavitt placed in a segregation setting,

allegedly in violation of the MDOC policies.  None of the facts alleged in the complaint pertain, however, to the decisions of or actions by the named MDOC defendants.

An individual cannot be held liable pursuant to § 1983 unless

> their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation.

Guzman v. Cranston, 812 F.2d 24, 25-26 (1st Cir. 1987). Supervisory liability under § 1983 "may not be predicated upon a theory of respondeat superior" or vicarious liability. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Rather, it requires "an affirmative link" or causal connection between the supervisor's conduct and the violation alleged. Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009); see also Pinto v. Nettleship, 737 F.2d 130, 133 (1st Cir. 1984)("[P]ersonal liability in damages under section 1983 cannot

be based on prison conditions beyond the control of a defendant.").

Here, although the Court is concerned about Cavitt's allegations, his complaint fails to state § 1983 claims against the individual MDOC defendants in their individual capacities because "it does little more than assert legal conclusions about [their] involvement" in the underlying constitutional violations. See Sanchez, 509 F.3d at 49.  The crux of the alleged underlying constitutional violations is Cavitt's placement in long-term solitary confinement by VDOC officials. No factual allegation indicates that any of the individual MDOC defendants were in any way associated with the decision by VDOC officials to place Cavitt in such confinement upon his arrival and/or his continued segregation pursuant to the VDOC Step-Down Program. See Dewey v. Univ. of N.H., 694 F.2d 1, 3 (1st Cir. 1982) ("[W]e insist that the [§ 1983] claim at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why."); see also Interstate Corrections Compact (placing matters of inmate security classification and discipline within the discretion of the receiving state and subjecting them to the statutes, regulations and internal rules of that state.).  Rather, the factual allegations indicate that the decision to segregate Cavitt was made by VDOC officials

pursuant to a classification hearing convened before them soon after his arrival in Virginia.

Although Cavitt attempts to describe a link between the actions or omissions of the MDOC defendants and his continued solitary confinement in Virginia by contending that the defendants deliberately chose to transfer him to a Virginia prison with the intention that he would be further subjected to solitary confinement, the Court is unpersuaded. Beyond a few conclusory statements, the complaint provides no factual support of the defendants' state of mind. See Iqbal, 556 U.S. at 686–87 (requiring a plaintiff plausibly to allege conditions of a person's mind through factual allegations).

Indeed, the individual MDOC defendants are mentioned by name in the complaint only two times: in the case caption and in the "Parties" section. Neither reference includes any factual allegations suggesting that the individual MDOC defendants intentionally transferred Cavitt to an out-of-state facility to be subjected to solitary confinement. Absent such factual allegations, the Court finds no causal connection between any action or omission of the individual defendants and Cavitt's confinement conditions in Virginia. For those reasons, the Court will dismiss the § 1983 claims asserted against defendants Mici, Nelligan and Gallant in their individual capacities.

### 2. 42 U.S.C. § 1983 – Official Capacity

An action against a government officer in his or her official capacity "is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Such actions may be brought only for injunctive, rather than monetary, relief. Id. at 71 n.10.

To state an official capacity claim for injunctive relief, the plaintiff must show that the government "entity's policy or custom . . . played a part in the violation of federal law." Hafer v. Melo, 502 U.S. 21, 25 (1991). To do so, the plaintiff must show

> (1) that the governmental entity's employees engaged in a continuing, widespread, persistent pattern of conduct in violation of the constitutional standard, (2) that the government entity's policymaking officials, after having notice of the misconduct, remained deliberately indifferent to or tacitly authorized continuation of that misconduct, and (3) that the plaintiff was injured by continued misconduct within the persistent pattern, thus showing that the custom was a moving force behind the violation of the constitutional standard.

Baldwin v. Town of West Tisbury, No. 19-cv-11747, 2020 WL 6786227, at *11 (D. Mass. Aug. 26, 2020).

Here, no factual allegation in Mr. Cavitt's complaint permits the plausible inference that, when transferring inmates out of state, MDOC employees have engaged in a persistent pattern of conduct in violation of constitutional standards.

None of the facts alleged supports the inference that employees of the MDOC have engaged in a pattern of intentionally sending inmates out of state to be placed in solitary confinement. Cavitt's complaint and opposition memorandum rather support the opposite inference, i.e. that Cavitt's treatment is the exception and that other inmates who have been transferred out of Massachusetts have typically been released to general population by the receiving state. See Jonielunas v. City of Worcester Police Dep't, 338 F. Supp. 2d 173, 178 (D. Mass. 2004) ("[T]he law is well-settled that a single incident of misconduct, without more, cannot provide the basis for [official capacity] liability under § 1983." (internal quotation marks and citations omitted)).

In any event, as outlined above, the policies and customs which have allegedly caused the underlying constitutional violations asserted herein are not those of the MDOC but, instead, those of the VDOC, namely, its Step-Down Program. Because Cavitt has failed to allege plausibly any policy or custom by the MDOC which caused the purported underlying constitutional violations, the official capacity § 1983 claims asserted against the individual MDOC defendants will also be dismissed.

Nevertheless, the Court does not mean to imply by virtue of this ruling that plaintiff has no claim against the Virginia Department of Correction which is not before the Court.

### 3.  Americans with Disabilities Act and the Rehabilitation Act

The standards under the ADA and the Rehabilitation Act are nearly identical and, thus, are often analyzed together. See Nunes v. Mass. Dep't of Corr., 766 F.3d, 136, 144 (1st Cir. 2014). To state a claim under either statute, a plaintiff must plead

> (1) that he is a qualified individual with a disability;
> (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

See Buchanan v. Maine, 469 F.3d 158, 173 (1st Cir. 2006).

As a threshold matter, such claims may only be brought against public entities and not individuals sued in their personal capacity. See Wiesman v. Hill, 629 F. Supp. 2d 106, 112 (D. Mass. 2009). Therefore, Cavitt's claims pursuant to the ADA and the Rehabilitation Act must be dismissed against the individual MDOC defendants in their personal capacities. The Court will also dismiss those claims against the individual MDOC defendants in their official capacities because they are wholly redundant to the ADA and Rehabilitation Act claims against the

MDOC itself. See, e.g., S.S. by S.Y. v. City of Springfield, Mass., 146 F. Supp. 3d 414, 426 (D. Mass. 2015) (dismissing as redundant ADA official capacity claims against individual municipal employees where ADA claim also asserted against the municipality).

With respect to whether the MDOC, as a public entity, violated those statutes, Cavitt contends that he suffers from mental health disabilities and that the MDOC has violated his rights under the ADA and the Rehabilitation Act by transferring him out of state and allowing the VDOC to house him in solitary confinement.  His complaint fails to state a claim under those statutes, however, because it provides no factual allegations showing that any denial of benefits was made by reason of his disability.  Rather, the complaint makes clear that the decision by the MDOC to transfer Cavitt out of state was due to his alleged involvement in gangs and the decision by the VDOC to place him in segregation was due to his purported "history" in Massachusetts, including violence, several attempts to escape and "gang issues".

Furthermore, to the extent Cavitt also alleges that his current confinement conditions fail to accommodate his disability, that claim is unavailing against the MDOC because it pertains solely to the treatment of Cavitt by the VDOC.  His

complaint specifically states that the cause of the alleged violations are that the

> VDOC does not provide out-of-state inmates with mental disabilities with alternative means to progress out of solitary confinement and fails to account for these disabilities.

See Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011) ("[S]ave under special conditions, an adequate complaint must include not only a plausible claim but also a plausible defendant"). Accordingly, this Court will also dismiss Counts IV and V as alleged against the MDOC and its employees.

### ORDER

For the foregoing reasons, defendants' motion to dismiss (Docket No. 26) is **ALLOWED.** The Massachusetts Department of Corrections, Carol Mici, Abbe Nelligan and Joy Gallant are hereby dismissed as defendants from this case.

With respect to defendant Harold Clarke, because proper service has not been effected (see Docket No. 23), the Court directs plaintiff to show cause, on or before Friday, January 29, 2021, why his claims against Clarke should not also be dismissed.

**So ordered**

\s\ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 11, 2021